United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 12, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 26-30693 |
| **CLAUDIA M. LONGOBARDI,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

Pending before the Court is a single matter self-styled as "Trustee's Expedited Motion for an Order Requiring Debtor Claudia M. Longobardi to Appear and Show Cause Why the Credit Counseling Certificate Filed with the Court Appears Altered"[1] ("*Motion For Show Cause*") filed on February 20, 2026 by Ms. Tiffany Castro, Chapter 13 Trustee ("*Trustee*") for the Southern District of Texas. On March 12, 2026, this Court held its initial appearance hearing for Claudia M. Longobardi ("*Debtor*") in which the Court also considered the Motion for Show Cause. At the March 12, 2026 hearing, the Court admitted into evidence Trustee's Exhibits at ECF No. 19, Exhibits 1-5.[2]

### I. Jurisdiction, Venue, and Constitutional Authority

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[3] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding involves

---

[1] ECF No. 15.
[2] Mar. 12, 2026 Min. Entry.
[3] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

primarily core matters as it "concern[s] the administration of the estate."[4] Furthermore, this Court may only hear a case in which venue is proper.[5] Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's main chapter 13 case is presently pending in this Court and therefore, venue of this proceeding is proper.

The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[6] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[7] None of the parties have ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

## II.  Analysis

### A.  History

---

[4] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). *Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P.* (*In re White-Robinson*), 777 F.3d 792, 795 (5th Cir. 2015) (finding that a contempt order concerned "the orderly administration of [debtor's] estate—namely, her attorney's compliance with federal bankruptcy rules and the orders of the bankruptcy court").
[5] 28 U.S.C. § 1408.
[6] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[7] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

1. Debtor filed her voluntary petition for chapter 13 relief under Title 11 on February 2, 2026.[8] Since February 2025, Debtor has filed multiple bankruptcy cases: 25-30621, 25-33632, 25-35818, and 25-36588. Each has been dismissed for failure to file required documents.[9]

2. Along with the voluntary petition, on February 2, 2026, Debtor filed a Certificate of Credit Counseling[10] and Application to Pay Filing Fees in Installments.[11] The Application to Pay Filing Fees in Installments has not been granted. A review of the Credit Counseling Certificate in this case (Certificate Number 13858-TXS-CC-039301077) raises concern regarding the authenticity and accuracy of the document. Specifically, the dates appear altered (i) to reflect issuance on January 23, 2026, (ii) the font for dates varies in appearance from the remainder of the document, and (iii) the photostatic copy appears to have other text bleeding through the date fields.[12]

3. An Order for Initial Hearing and Compelling Attendance was entered on February 3, 2026, requiring Debtor to appear in person or virtually on March 12, 2026, at 8:30 a.m.[13]

**B. The Credit Counseling Certificates**

Upon inspection by the Court, MoneySharp Credit Counseling, Inc. ("*MoneySharp*") reflects only one certificate, dated February 3, 2025, which has been issued to Debtor. Trustee's Exhibit No. 5[14] is the business record affidavit signed by Edward Sanchez, the President of MoneySharp wherein he states under penalty of perjury that

"The records appended hereto include:

**Exhibit A** — The original certificate of counseling bearing certificate number 13858-TXS-CC-039301077, issued on February 3, 2025.
**Exhibit B** — Internal business records regarding the course purchase, completion, and certificate issuance corresponding to certificate number 13858-TXS-CC-039301077."[15]

The certificate issued by MoneySharp on February 3, 2025 (Certificate Number 13858-TXS-CC-039301077) was filed in case number 25-30621 (Judge Marvin Isgur) at docket number

---

[8] ECF No. 1.
[9] Bankr. Case Nos. 25-30621, ECF No. 11; 25-33632, ECF No. 14; 25-35818, ECF No. 14; 25-36588, ECF No. 15.
[10] ECF No. 2.
[11] ECF No. 4.
[12] ECF No. 2.
[13] ECF No. 6.
[14] ECF No. 19, Ex No. 5.
[15] ECF No. 19, Ex No. 5.

3 on February 3, 2025.[16] Debtor did not file a credit counseling certificate in case number 25-33632. A certificate allegedly issued by MoneySharp (Certificate Number 13858-TXSCC-039301077) dated September 30, 2025, was filed in case number 25-35818 (Judge Christopher Lopez) at docket number 3 on October 2, 2025.[17] Additionally, a certificate allegedly issued by MoneySharp (Certificate Number 13858-TXSCC-039301077) dated September 30, 2025, was filed in case number 25-36588 (Chief Judge Eduardo Rodriguez was initially assigned the case but it was transferred to Judge Christopher Lopez) at docket number 8 on November 3, 2025.[18] In the case at bar, a certificate allegedly issued by MoneySharp (Certificate Number 13858-TXS-CC-039301077) dated January 23, 2026 was filed on February 2, 2026 at docket number 2.[19]

Inexplicably, each certificate filed within the multitude of cases reflects identical Certificate Numbers but varying certification/issuance dates. Volume 9-1 of the U.S. Trustee Program Manual and Policies reads as follows:

> The Program approves organizations to provide the mandatory credit counseling and debtor education. Only approved agencies and providers may advertise their approval to provide the required credit counseling and debtor education, and only approved agencies and providers may issue credit counseling and debtor education certificates. These certificates are generated through the Program's Certificate Generation System (CGS), and the certificates are both **numbered** and **bar-coded** to protect against fraud.[20]

Based on the U.S. Trustee Program's guidelines, the certificates allegedly issued September 30, 2025, and January 23, 2026, should have different bar codes and certificate control numbers, yet each certificate bears the identical control number of 13858-TXS-CC-039301077 despite allegedly being issued on separate dates. Further, if the certificates were issued by MoneySharp in

---

[16] ECF No. 19, Ex No. 4.
[17] ECF No. 19, Ex No. 3.
[18] ECF No. 19, Ex. No. 2.
[19] ECF No. 19, Ex. No. 1.
[20] Volume 9 Credit Counseling and Debtor Education, Chapter 9-1, available at
https://www.justice.gov/ust/file/volume_9_credit_counseling_and_debtor_education.pdf/dl?inline (emphasis added).

compliance with 11 U.S.C. § 109(h), Debtor would have completed a new credit counseling course on or before September 30, 2025, and on or before January 23, 2026. MoneySharp does not reflect any credit counseling services provided to Debtor after February 3, 2025.[21]

## C. Debtor's Testimony at the March 12, 2026 hearing

At the March 12, 2026, hearing Debtor readily admitted to altering the credit counseling certificate (Certificate Number 13858-TXS-CC-039301077) to save her home from foreclosure.[22] As such, the Court finds that Debtor altered a credit counseling certificate and submitted it to the Court, knowing that it was altered, to circumvent the requirements of the Bankruptcy Code.[23]

## D. Remedies

Altering a credit counseling certificate in bankruptcy can result in both criminal penalties and civil consequences under federal law. One possible penalty is criminal prosecution under 18 U.S.C. § 152, which provides for imprisonment of up to five years for knowingly and fraudulently making a false declaration, certificate, verification, or statement under penalty of perjury in relation to any bankruptcy case.[24] Additionally, 18 U.S.C. § 1519 imposes even harsher penalties—up to 20 years imprisonment—for anyone who knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record or document with the intent to impede, obstruct, or influence the proper administration of any case filed under title 11.[25] Pursuant to 18 U.S.C. § 3057(a), a court "having reasonable grounds for believing that" violation under chapter 9 of title 18 or other laws of the United States related to debtors "has been committed, or

---

[21] ECF No. 19, Ex. No. 5.
[22] March 12, 2026 Courtroom Hearing (Debtor testifying).
[23] See 11 U.S.C. § 109(h) (providing that an individual cannot be a debtor unless such individual, during the 180-day period ending on the date of the fling of the petition, completes a credit counseling course).
[24] 18 U.S.C. § 152.
[25] 18 U.S.C. § 1519.

that an investigation should be had in connection therewith," has an obligation to report the facts and circumstances surrounding that case to the United States Attorney.

Here, Debtor admitted to altering the credit counseling certificate (Certificate Number 13858-TXS-CC-039301077) to save her home from foreclosure.[26] Specifically, Debtor altered such certificate to reflect that Debtor completed a credit counseling course from MoneySharpe on January 23, 2026 when, in fact, the credit counseling was completed on February 3, 2025.[27] As such, the Court finds reasonable grounds to believe that crimes were committed under 18 U.S.C. § 152, including but not limited to subsections (2) and (3), and 18 U.S.C. § 1519, and therefore, will refer this case to the United States Attorney for investigation.

Moreover, bankruptcy courts have inherent authority to sanction parties appearing before them for acting in bad faith, and this authority extends to pro se litigants.[28] "A bankruptcy court has broad authority to take necessary or appropriate actions to prevent an abuse of process."[29] To sanction a pro se litigant under its inherent authority, the bankruptcy court must find by clear and convincing evidence that the litigant engaged in bad faith conduct.[30] Injunctive relief limiting a person's future access to the courts has been recognized as a possible sanction to redress bad faith conduct.[31]

Here, Debtor has filed four other bankruptcy cases.[32] Each has been dismissed for failure to file required documents.[33] In this instant bankruptcy case, Debtor's own testimony demonstrates

---

[26] March 12, 2026 Courtroom Hearing (Debtor testifying).
[27] ECF No. 19, Ex. Nos. 1; 5.
[28] *Sinegal v. PNK Charles LLC*, No. 2:18-CV-01157, 2024 U.S. Dist. LEXIS 63304, at *4 (W.D. La. Apr. 4, 2024); *Caroll v. Abide* (*In re Carroll*), 850 F.3d 811, 816 (5th Cir. 2017) ("[Section 105] has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process.").
[29] *Trevino v. HSBC Mortg. Servs.* (*In re Trevino*), 535 B.R. 110, 132 (Bankr. S.D. Tex. 2015)
[30] *Id.*; *Leonard v. Luedtke* (*In re Yorkshire LLC*), 540 F.3d 328, 332 (5th Cir. 2008).
[31] *See Carroll v. Jaques*, 926 F. Supp. 1282, 1291 (E.D. Tex. 1996); *Michael v. Boutwell*, 138 F. Supp. 3d 761, 784 (N.D. Miss. 2015).
[32] Bankr. Case Nos. 25-30621; 25-33632; 25-35818; and 25-36588.
[33] Bankr. Case Nos. 25-30621, ECF No. 11; 25-33632, ECF No. 14; 25-35818, ECF No. 14; 25-36588, ECF No. 15.

that Debtor submitted an altered certificate of counseling to circumvent the requirements of § 109(h).[34] Debtor's multiple failed bankruptcies, along with her willful attempt to circumvent the requirements of the Bankruptcy Code by submitting an altered credit counseling certificate, demonstrates by clear and convincing evidence that Debtor engaged in bad faith conduct. The Court finds it appropriate, to redress the bad faith conduct and prevent future abuse, to dismiss this bankruptcy case with prejudice to refiling for a period of two years.

### III.    Conclusion

An accompanying order consistent with this Memorandum Opinion will be entered on the docket.

**SIGNED Thursday, March 12, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

---

[34] March 12, 2026 Courtroom Hearing (Debtor testifying).